UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ISMAEL HERNANDEZ JUAREZ,

Petitioner,

v.

JULIO HERNANDEZ, *et al.*,

Respondents.

Case No. C26-2332-SKV

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS

Petitioner is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. On March 31, 2026, Petitioner was granted habeas relief by the Honorable Tiffany M. Cartwright, who ordered Respondents to "either release him or provide him a bond hearing under 8 U.S.C. § 1226(a)" within fourteen days of receiving his request for a bond hearing. *Carranza v. Hernandez*, C26-01044-TMC, 2026 WL 879251, at *2 (W.D. Wash. Mar. 31, 2026). The immigration court held that hearing on April 24, 2026, and Petitioner's instant 28 U.S.C. § 2241 habeas action asserts the immigration judge's ruling at that bond hearing was unconstitutional and violates § 1226(a). *See generally* Dkt. 1. Respondents filed a return (Dkt. 6), together with declarations from U.S. Department of Homeland Security ("DHS") Deportation Officer Christopher Hubbard (Dkt. 7)

and their counsel Barbara Andrade (Dkt. 8). Petitioner filed a traverse in reply (Dkt. 9). The parties have also filed supplemental briefing as further explained below. Dkts. 14-18. The case has significant procedural history that is further outlined below, *see infra,* Part I, and the matter is now ripe for adjudication.

Having reviewed the parties' submissions and the governing law, the Court GRANTS in part the petition (Dkt. 1) for the reasons set forth below.

## I. BACKGROUND

Petitioner is a citizen of Mexico who first entered the United States in May 2008 and subsequently voluntarily returned to Mexico on May 28, 2008. Hubbard Decl., ¶¶ 4, 6. Petitioner reentered the United States on November 20, 2009, *see* Hubbard Decl., ¶ 7, and Petitioner asserts he has lived in the United States for over sixteen years, Dkt. 1, ¶¶ 21-22; Dkt. 1-3 at 6.

The record contains a substantial amount of background information about Petitioner's life, family, and his ties to the Spokane community, primarily from documents and exhibits attached to his original bond request (Dkt. 1-3). These include a declaration from Petitioner (*id.* at 6-7), character and reference letters from community members (*id.* at 9, 14, 18-19, 21-22, 24-26, 28-29, 31, 33, 35), birth certificates for his children (*id.* at 11, 12), a letter from the treating oncologist for Petitioner's child (*id.* at 16), letters and documents showing financial contributions to Petitioner's church (*id.* at 37-41), federal tax filings (*id.* at 43-46), and family pictures (*id.* at 47-73). To summarize, the evidence shows Petitioner has lived and worked in the Spokane, Washington area with his family since 2018. Dkt. 1, ¶ 1. He is the primary financial provider for his family, which consists of his partner and three children, two of whom are U.S. citizens. *Id.* His youngest son has "Acute Lymphoblastic Leukemia," a life-threatening cancer that

requires regular treatment. *Id.* The reason Petitioner and his family moved to the Spokane area was to be closer to the hospital where his son receives that cancer treatment. *Id.* Since his detention, Petitioner's two minor children have required psychological treatment. Dkt. 1-3 at 7. In addition, Petitioner has no criminal history. *Id.*

The events that led to Petitioner's instant detention started on December 27, 2025, when U.S. border patrol agents "encountered" Petitioner during a "targeted enforcement operation." Hubbard Decl., ¶ 8; *see* Dkt. 8-2 at 4-5. The DHS I-213 form documents that ICE agents were conducting surveillance "on a location associated with several targets identified as being illegally present in the United States and designated for targeted enforcement efforts." Dkt. 8-2 at 4. Agents pulled Petitioner's vehicle over, asked for his identification, and questioned him regarding his citizenship status. *Id.* at 4-5. After answering the agents' questions, Petitioner was "arrest[ed] for being illegally present in the United States[.]" *Id.* at 5.

Border patrol served Petitioner with a Notice to Appear ("NTA") charging him with inadmissibility under the Immigration and Nationality Act ("INA"). Hubbard Decl., ¶ 9. Petitioner was transported to the NWIPC on December 30, 2025. *Id.* ¶ 10.

On March 18, 2026, an immigration judge ("IJ") denied Petitioner's applications for relief from removal and ordered him removed to Mexico. *Id.* ¶ 11; *see* Dkt. 1-4 at 8-13. Petitioner filed an appeal with the Board of Immigration Appeals ("BIA") which remains pending. Hubbard Decl., ¶ 14.

As noted above, Petitioner, along with several other co-petitioners, sought habeas relief in this court, challenging the statutory classification of their detentions under 8 U.S.C. § 1225(b). *Carranza*, 2026 WL 879251, at *1. The court found that (1) Petitioner fell within the "Bond Denial Class" as defined in *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297, 1336 (W.D.

Wash. 2025), (2) that he is subject to discretionary detention under § 1226(a), and (3) that his mandatory detention under § 1225(b) thus violated the INA and entitled him to relief. *Id.* at *1-2. The court ordered Respondents to either release him or provide a bond hearing under § 1226(a) within fourteen days of receiving Petitioner's request for a bond hearing. *Id.* at *2.

The immigration court held the hearing on April 24, 2026. Hubbard Decl., ¶ 16. The IJ found Petitioner to be a flight risk and denied his request for bond. Dkt. 1-5 at 2. The IJ issued his initial order in a checkbox form that does not contain any findings or written analysis. *Id.* Petitioner filed an appeal of the IJ's bond decision with the BIA on May 21, 2026. Hubbard Decl., ¶ 17. On May 29, 2026, the IJ issued a written memorandum, outlining the reasoning for his decision. Dkt. 1-6. The Court need not discuss the specific circumstances of the April 24, 2026, bond hearing or the IJ's reasoning outlined in his written memorandum because Respondents concede that the IJ improperly applied an incorrect, higher standard of proof at that hearing. Dkt. 6 at 3, 5-6.

Recognizing the IJ applied the incorrect standard, Respondents scheduled a new bond hearing to be held on July 21, 2026. Dkt. 6 at 5; Hubbard Decl., ¶ 19. Petitioner and his attorney were notified of the rescheduled bond hearing the day before the hearing, on July 20, 2026. *See* Dkt. 8-5. Respondents submitted more evidence for the second bond hearing than they did for the first, *compare* Dkt. 1-4 at 3, *with* Dkt. 10-2 at 3, but Petitioner was only able to resubmit his original bond motion because of the short notice, *see* Dkt. 17-1 at 7. In their return memorandum to the current petition, Respondents request "the Court permit the agency to conduct that hearing and apply the appropriate burden of proof in the first instance." Dkt. 6 at 5-6.

Other than this imbedded request in their return memorandum, it appears Respondents took no further action to extend the allowable time to provide Petitioner with a bond hearing under § 1226(a) after the IJ conducted the first hearing using the wrong standard of proof.

Nevertheless, Respondents conducted the rescheduled July 21, 2026, bond hearing, at which the IJ again denied bond. Dkt. 9 at 8. As further explained below, the IJ found Petitioner failed to prove he was not a flight risk due to his limited immigration relief, his immigration history, and a prior "false claim of citizenship." *See* Dkt. 17-1 at 17. The Court has reviewed the entirety of the certified transcript of the hearing. *See* Dkt. 17.

The July 21, 2026, bond hearing was conducted during this case's pendency and before Petitioner's traverse in reply was due. In his reply, Petitioner acknowledges the second bond hearing and again challenges the IJ's decision as legally erroneous for reasons similar to the first. *See generally* Dkt. 9. He argues the IJ failed to apply the proper standard and that the factors considered by the IJ did not support, as a matter of law, finding him to be a flight risk. *Id.* at 1. However, Petitioner's primary argument is that this Court should not even consider the merits of the July 21, 2026, bond hearing because, by failing to provide a bond hearing under § 1226(a) within fourteen days of his request, the only other available option per Judge Cartwright's habeas order was release from custody. *Id.* at 2-7.

On August 8, 2026, the Court construed Petitioner's reply as an amendment to his petition and issued an order allowing additional briefing. Dkt. 12. The Court allowed the parties to supplement the record with additional arguments and information on exhaustion; specifically, whether Petitioner should be required to appeal the IJ's bond decision from the second, July 21, 2026 denial. *Id.* at 2-3.

In Petitioner's supplemental briefing, he reemphasizes the position he took in his reply—that Ninth Circuit case law surrounding noncompliance with conditional writs requires his release. Dkt. 14 at 2-7. Petitioner also asserts that, to the extent the Court considers the merits of his substantive challenge to the IJ's discretionary bond denial, he should not be required to exhaust an appeal with the BIA before seeking habeas relief here. *Id.* at 7-13.

Respondents argue that neither the factors articulated in *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007), nor *Laing v. Ashcroft*, 370 F.3d 994, 1000-01 (9th Cir. 2004), support waiving Petitioner's requirement to first exhaust his available appeal to the BIA. Dkt. 16 at 3-7.

For the following reasons, the Court waives Petitioner's exhaustion requirement and concludes the IJ abused his discretion when he failed to meaningfully engage with the evidence or explain how it supported finding Petitioner failed to prove he was not a flight risk. Thus, the Court finds the IJ failed to correctly apply the governing legal standard at the July 21, 2026, bond hearing and Petitioner is accordingly entitled to habeas relief. In doing so, the Court does not reach Petitioner's "conditional writ" claim stemming from Judge Cartwright's order in *Carranza*.

## II. LEGAL STANDARDS

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). A petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

//

## III. DISCUSSION

### A. The Court Waives any Exhaustion Requirement

As an initial matter, the Court addresses whether Petitioner should first appeal the July 21, 2026, bond denial before seeking habeas relief in federal court. The exhaustion of administrative remedies in habeas claims is a prudential, rather than jurisdictional, requirement. *See Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (internal citations omitted). A court may require prudential exhaustion where: (1) agency expertise is necessary to build a proper record; (2) waiving the requirement would encourage bypassing the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes, obviating the need for judicial intervention. *Id.* (citing *Puga,* 488 F.3d at 815). If a court determines that an immigration detainee has failed to exhaust administrative remedies as a prudential matter, it should either dismiss the matter without prejudice or stay the case to permit exhaustion. *Id.* However, even if these "*Puga*" factors weigh in favor of prudential exhaustion, the Court may waive the requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Id.* (quoting *Laing*, 370 F.3d at 1000). "The party moving the court to waive prudential exhaustion requirements bears the burden of demonstrating that at least one of these "*Laing*" factors applies." *Aden v. Nielsen*, C18-1441-RSL, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019) (citations omitted).

The Court need not discuss the *Puga* factors because Petitioner has demonstrated he will continue suffering irreparable injury should he first be required to wait for the BIA to adjudicate his appeal before seeking habeas relief. Here, the record demonstrates Petitioner was the primary financial provider for his family, that his son requires regular cancer treatment, and that,

in his absence, his children have suffered harm requiring psychological care. The cases cited by Respondents, *Loya Medina v. Hernandez*, C26-00772-GJL, 2026 WL 1260848, at *6 (W.D. Wash. May 7, 2026), and *Vazquez Lopez v. Hernandez*, C26-0775-TSZ, 2026 WL 984151, at *2 (W.D. Wash. April 13, 2026), further support this finding, as Petitioner has demonstrated he and his family have suffered similar harm.

**B. The IJ Abused His Discretion**

Federal courts have habeas jurisdiction over constitutional claims and questions of law. *Hernandez*, 872 F.3d at 987. A bond denial due to community danger or flight risk is a mixed question of law and fact, subject to judicial review by federal courts under an abuse of discretion standard. *See Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024). While the Court does not properly review "underlying factual determinations" such as "credibility, the seriousness of a family member's medical condition, or the level of financial support a noncitizen currently provides[,]" it may review for an abuse of discretion pure legal questions or mixed questions of law and fact, "even when [the latter] are primarily factual[.]" *Id.* at 782-84 (quoting *Wilkinson v. Garland*, 601 U.S. 209, 225 (2024)).

The parties agree that Petitioner was ordered a bond hearing under 1226(a). Dkt. 1 at 10; Dkt. 6 at 3. In making a bond decision under § 1226(a), an immigration judge must consider whether the detainee is "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006) (citing *Matter of Patel*, 15 I. & N. Dec. 666 (B.I.A. 1976)). An immigration judge may also consider any number of discretionary factors, including: (1) whether the detainee has a fixed address in the United States; (2) the detainee's length of residence in the United States; (3) the detainee's family ties in the United States, and whether they may entitle the detainee to reside

permanently in the United States in the future; (4) the detainee's employment history; (5) the detainee's record of appearance in court; (6) the detainee's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the detainee's history of immigration violations; (8) any attempts by the detainee to flee prosecution or otherwise escape authorities; and (9) the detainee's manner of entry to the United States. *See id.*

The Court now turns to the limited question before it: whether the IJ correctly applied the governing law during the July 21, 2026 bond hearing.

Petitioner asserts that the "second bond hearing was not a meaningful, genuine opportunity for [him] to show his entitlement to bond under the correct standard of proof." Dkt. 9 at 8. He argues the IJ premised his decision on factors that, as a matter of law, do not support a finding of flight risk. *Id.* at 9. Respondents do not discuss the IJ's findings or otherwise respond to Petitioner's contention that the IJ abused his discretion in either their original return memorandum or their supplemental briefing. *See generally* Dkts. 9, 16. Instead, Respondents' primary position appears to be that the petition should be denied for failing to exhaust an available appeal. Dkt. 16 at 2. The Court, however, has already waived that requirement. *See supra*, Part A.

The transcript from the July 21, 2026, hearing demonstrates the IJ abused his discretion by failing to meaningfully engage with the available evidence and explain his rationale. Further, no reasonable adjudicator could have found, based on the evidence before it, that Petitioner posed a risk of flight or that the evidence he submitted did not prove by a preponderance of evidence that he posed no such risk.

As an initial matter, the Court observes that the IJ began the July 21, 2026, hearing by acknowledging the "court [was] going to conduct the custody hearing a second time" but then erroneously stated that he was going to hold DHS to a "clear and convincing" evidence standard. Dkt. 17-1 at 5. The IJ's error required the attorneys to clarify with the court:

> MR. STEVESON TO JUDGE
>
> The government agrees that putting the burden of proof on the detainee by clear and convincing evidence at the last hearing, that that is not -- that was incorrect. However, it is the government's position that an individual detained pursuant to 236(a) has the burden of proof by the preponderance of the evidence.
>
> …
>
> MS. QUESADA PONCE TO JUDGE
>
> Thank you, your honor. I agree with the government's position that *Rodriguez Diaz* is the leaning [sic] case in here, where it states that, by the preponderance of the evidence, the respondent has the burden of proof to show that they merit release.
>
> JUDGE TO MR. STEVESON
>
> All right.

*Id.* at 8-9.

The IJ then acknowledges that Judge Cartwright's order "simply just directs a bond hearing under 8 U.S.C. [§] 1226(a)" and that "the only thing that the court [saw] different is the standard[.]" *Id.* at 12-13.

The IJ's confusion suggests he did not carefully contemplate the procedural posture of the case or meaningfully consider the legal significance of the differences between the erroneous standard applied at the prior hearing and the correct standard to be applied at the latter. The transcript does not reflect that the IJ discussed the differences between the standards of proof or the significance of the burden being placed on Petitioner. "Adopting a 'standard of proof is more than an empty semantic exercise[,]'" *Addington v. Texas*, 441 U.S. 418, 425 (1979) (citation

modified), and in immigration matters, where the deprivation of a person's liberty is at issue, the distinction matters. *See, e.g., Singh v. Holder*, 638 F.3d 1196, 1205 (9th Cir. 2011) (acknowledging "the standard of proof could well have affected the outcome of the bond hearing").

Next, the parties presented their respective arguments. Petitioner's counsel reiterated Petitioner's ties to the United States, including his family, his U.S. citizen children, his child's illness, his residence in Spokane, his employment and volunteer work, his federal tax payments, and a "strong claim for relief with the immigration court." Dkt. 17-1 at 15. These factors, asserted his counsel, undermined any risk of flight or danger to the community. *Id.* at 14.

The government, in turn, argued Petitioner was a flight risk:

> MR. STEVESON TO JUDGE
>
> Your honor, the government asserts that there's flight risk in this case. I would just point out that respondent entered the United States, you know, without detection. Previously, he did have a false claim to citizenship. And then, sometime in apparently 2008 or 2009, after that, he reentered the United States and was able to work without detection and -- until recently. And so, based on that, the government is asserting flight risk. And additionally, his claim for relief, you know, the 42B -- or the cancelation of removal for non-lawful permanent residents is a very high standards [sic], very difficult to obtain, and so his claim for relief is -- was denied at the IJ level, so his case is very tenuous at this time. Thank you.

*Id.* at 16.

The IJ acknowledged Petitioner's appeal of his removal order was pending before the BIA and asked whether DHS knew when to expect a decision. *Id.* at 17. The DHS attorney responded that he did not know. *Id.*

The IJ then rendered his decision:

> All right, counsel, the court'll just briefly summarize, and I won't take long, since we were on the record suddenly previously on this case. The factual information really hasn't changed. I do note that the court's earlier finding was not that there was a danger to community, it was just based on flight risk. And again, that was looking

> at a different burden in this case. The court is going to deny the bond request, and finds that, even under the different standard, that the respondent hasn't shown that he's not a flight risk. The court doesn't find a danger to the community, and the court has considered the respondent's ability to pay. But the same factors that were considered earlier, I think, are present. A primary dynamic really is that, I think, the relief for appeal, the court finds, is speculative for the 42B, and that dynamic does change a lot of the situation in the respondent's life, when factored into sort of front end of when he entered the United States with the previous immigration history that was already articulated with the previous false claim of citizenship, and then the reentry. So the court is going to make a similar finding with an adjusted standard of flight risk on the [sic] portion. I also do recognize that it is a bit of a thrash for the respondent to come back into the court, you know, on a similar issue that we took up a couple weeks -- I guess maybe even a couple of months ago, at this point. So I do thank counsel for your flexibility in showing up on short notice here. Should that be appealed, the court'll then issue another written decision memorandum capturing that decision.

*Id.* at 17-18.

Thus, the IJ appears to have denied bond and found Petitioner to constitute a flight risk based on three factors: "speculative" relief on appeal, his immigration history, and a "previous false claim of citizenship." *Id.*

The Court disposes of these "factors" as permissible bases for finding Petitioner to be a flight risk. In doing so, it does not reweigh any evidence allegedly supporting those factors or make any other fact-based assessments that would exceed this Court's charge, but rather looks to whether the IJ "correctly applied the statutory standard to a given set of facts." *Wilkinson*, 601 U.S. at 221. Courts in this District have found that limited forms of immigration relief and a noncitizen's prior immigration history, without adequate reasoning or explanation from the IJ connecting those factors to the ultimate finding made, cannot serve as permissible bases to support such findings, and, thus, are an abuse of the IJ's discretion. *See, e.g., Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1080 (W.D. Wash. 2026) ("Concluding that an unlawful entry from 25 years ago, without any criminal history or any history of failing to appear, automatically

weighs in favor of finding flight risk lacks any objective rationale"); *id.* at 1081 (finding the IJ "provided no rationale" why weak claims for relief from removal meant "[p]etitioner would try to flee rather than appear in immigration court"); *Loya Medina v. Hernandez*, C26-772-GJL, 2026 WL 1260848, at *7-8 (W.D. Wash. May 7, 2026) (finding "prior immigration history" and "limited forms of relief available in removal proceedings," standing alone, are insufficient under *Soriano*); *Segura Serrano v. Scott*, C26-1268-LK, 2026 WL 1674357, at *7-8 (W.D. Wash. May 26, 2026) (similar).

Like the IJ in those cases, the IJ here "provided no rational connection between [Petitioner's] lack of potential forms of relief from removal and his supposed flight risk", *Segura Serrano*, 2026 WL 1674357, at *8, or why Petitioner's conduct seventeen years ago "suggests [that he] would be motivated to flee and otherwise not appear at future immigration proceedings," *Soriano*, 2026 WL 969764, at *5. Nor did the IJ explain how either Petitioner's "speculative" relief on appeal or his immigration history outweighed the positive equities weighing against finding him to be a flight risk—such as his established connections with his family, the community, his child's cancer treatment facility, and his employment. *See Soriano*, 2026 WL 969764, at *5.

The Court observes that the IJ who decided the merits of Petitioner's applications for relief and ordered him removed to Mexico is different than the IJ here. *Compare* Dkt. 10-2 at 11, *with* Dkts. 15-1 at 3, 17-1 at 2. And while the BIA has decided that an IJ may consider the likelihood that relief from removal will be granted in determining whether a noncitizen is a flight risk, *see Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 805 (BIA 2020), it is unclear from the transcript how the IJ came to conclude Petitioner's appeal claim is "speculative" and why that necessarily supported finding Petitioner failed to prove he was not a flight risk. *See generally*

Dkt. 17-1. The notices of evidence filed by the parties prior to the bond hearing only included receipts showing an appeal had been filed but do not reflect that either party submitted substantive evidence of Petitioner's claims on appeal, the merits of which could have been reviewed by the IJ. *See* Dkts. 1-3 at 2-3, 10-2 at 2-3. Thus, the IJ may have necessarily reviewed *something* to ultimately find Petitioner's claim on appeal to be "speculative," but what that was and why it supported the IJ's findings are not in the record or discussed by the IJ.

The significance of Petitioner's immigration history as it relates to his risk of flight is equally unclear and unexplained by the IJ. *See* Dkt. 17-1 at 17 (vaguely referencing Petitioner's "previous immigration history that was already articulated"). Petitioner presented evidence that he has lived in eastern Washington since 2009 and in the Spokane area since 2017, with his wife and children—one of whom is severely ill and requires regular cancer treatment. He has been steadily employed as the primary financial provider for his family and a long-time member and volunteer at his church. Not only does the IJ ignore these positive equities but he is also silent as to why Petitioner's reentry into the United States in 2009, without more, supports finding Petitioner would flee, abscond, or otherwise fail to appear for proceedings *today*. *See Garcia Miranda v. Hernandez*, 2026 WL 1328227, at *4 (May 13, 2026) ("The IJ does not explain how [petitioner's] prior unlawful entry, an event that occurred almost three decades ago, . . . informs his flight risk *today*, . . . in the face of overwhelming evidence of his deep ties to his community and family.") (emphasis in original); *Montiel Moreno v. Hernandez*, 2026 WL 1906522 (W.D. Wash. June 18, 2026) (similar). Arguably, Petitioner's reentry into the United States in 2009 demonstrates a reluctance to leave the United States or an unwillingness to return to Mexico during that time—not that he poses a risk of flight in 2026.

Finally, as for Petitioner's alleged "false claim of citizenship," nothing in the evidentiary record from the bond hearing substantiates that claim. During his argument, the DHS attorney summarily concluded that Petitioner "did have a false claim to citizenship" but says nothing more. Dkt. 17-1 at 16. The evidence submitted by DHS prior to the bond hearing does not substantiate that assertion or provide additional information. At most, the I-213 form has an entry under "Criminal History" that reads: "05/11/2008 – False Claim to Citizenship." Dkt. 10-1 at 6. However, it is unclear who documented that entry, if or when it was adjudicated, whether it resulted in a criminal conviction, or any other circumstances beyond the limited administrative entry noted. *See Eldifonso v. Hernandez*, C26-2455-TLF, 2026 WL 2282978, at *4 (W.D. Wash. Aug. 7, 2026) (finding "any further context for [I-213] statements, such as the reliability of th[e] information, how it was obtained, or the identity or roles of the individuals involved, [was] not provided"). Indeed, Officer Hubbard states in his declaration here that "Petitioner was charged under California Penal Code Section 114 with Using a False Citizenship Document" but concedes that "[t]he disposition of that charge is unclear." Hubbard Decl., ¶ 5. Officer Hubbard does not explain how he learned of that information and Respondents do not explain why DHS relied on it at the bond hearing. At the hearing, Petitioner's counsel attempted to point out the limited corroborating evidence of the false claim allegation—which, again, was relied upon by the IJ in finding Petitioner to be a flight risk—but was quickly dismissed by the IJ. *See* Dkt. 17-1 at 18 ("[Y]ou can certainly take that up as it gets addressed for the appeal[.]"). For Respondents to advance a contextless, potentially unadjudicated criminal charge as a basis to argue Petitioner posed a flight risk, and for the IJ to accept that as sufficient, were troubling positions in seeming tension with even relaxed rules of evidence, and, more importantly, the fundamental concept of "innocence."

In sum, the IJ failed to provide any reasoning for his decision that Petitioner poses a flight risk. His decision did not rationally apply the governing legal standard to the facts and evidence presented. *Martinez*, 124 F.4th at 783. Petitioner presented evidence that he has been living in the United States for sixteen years, has lived at the same address for the past nine years, is in a stable relationship with his wife, has dependent children, one of whom suffers from a life-threatening illness, has regularly volunteered in his community, has no history of failing to appear or absconding, and has no criminal history. This evidence was directly relevant to the factors articulated in *Guerra* and weighed in favor of release or bond, but went unacknowledged and unexplained as to how they were outweighed by other factors. *See Franco-Rosendo v. Gonzales*, 454 F.3d 965, 966 (9th Cir. 2006) (finding that the BIA abuses its discretion "when it fails to 'consider and address in its entirety the evidence submitted by a petitioner'") (citation modified). Further, no reasonable adjudicator in the IJ's position could have found that he failed to prove by a preponderance of the evidence that he did not pose a risk of flight.

Because Petitioner's bond hearing was legally and constitutionally deficient and there is no adequate basis for his continued detention, release is the appropriate remedy. *See, e.g., Soriano*, 2026 WL 969764, at *6; *Segurra Serrano*, 2026 WL 1674357, at *9.

**C. Remaining Claims**

Petitioner also seeks specific relief should he be released, such as an order prohibiting the government from requiring an ankle or wrist monitor, the return of personal property, and an order requiring the IJ be provided a copy of this Court's Order and that he read and affirm in writing that he has done so. Dkt. 1 at 29. The petition does not develop a relevant factual record or present any legal support for such specific relief and the Court therefore declines to order it.

//

## IV. CONCLUSION

Based on the foregoing, the Court ORDERS:

(1) Petitioner's petition for writ of habeas corpus, Dkt. 1, is GRANTED in part.

(2) Respondents shall RELEASE Petitioner from custody **within 24 hours** of the issuance of this Order with reasonable conditions of supervision.

(3) Respondents shall file a notice with the Court confirming Petitioner's release **within 48 hours**.

(4) Petitioner's remaining requests for relief are DENIED.

(5) The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 26th day of August, 2026.

S. KATE VAUGHAN
United States Magistrate Judge